IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS K. McDANIEL and BRYAN CLARK, on behalf of themselves, all others similarly situated, and the general public,<br><br>          Plaintiffs,<br><br>     v.<br><br>WELLS FARGO INVESTMENTS, LLC, a Delaware limited liability company, WELLS FARGO BANK, N.A., a National Association, WELLS FARGO ADVISORS, LLC, a Delaware limited liability company, and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No. 10-4916 SC<br><br>ORDER GRANTING DEFENDANTS' <u>MOTION TO DISMISS</u> |

## I.   **INTRODUCTION**

On July 9, 2010, Plaintiffs Douglas K. McDaniel ("McDaniel") and Bryan Clark ("Clark") (collectively, "Plaintiffs") filed this action in San Francisco County Superior Court on behalf of themselves and all others similarly situated against Defendants Wells Fargo Investments, LLC, Wells Fargo Bank, N.A., and Wells Fargo Advisors, LLC (collectively, "Wells Fargo" or "Defendants"). ECF No. 1 ("Notice of Removal") Ex. A ("Compl."). Wells Fargo removed the action on October 29, 2010, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). <u>See</u> Notice of Removal.

1  Plaintiffs filed a First Amended Complaint on April 6, 2011. ECF

2  No. 18 ("FAC").  Wells Fargo now moves to dismiss the FAC pursuant

3  to Federal Rule of Civil Procedure 12(b)(6), arguing that

4  Plaintiffs' state law claim is preempted by federal law.  ECF No.

5  22 ("Mot.").  The Motion is fully briefed.  ECF Nos. 24 ("Opp'n"),

6  27 ("Reply"), 30 ("Surreply").[1]  Pursuant to Civil Local Rule 7-

7  1(b), the Court finds the Motion suitable for determination without

8  oral argument.  For the reasons stated below, the Court GRANTS

9  Wells Fargo's Motion and dismisses this action with prejudice.

10

11  **II.   BACKGROUND**

12      Plaintiff McDaniel alleges that he was formerly employed as a

13  financial consultant by Wells Fargo Investments, LLC, and Wells

14  Fargo, N.A.  FAC ¶¶ 5, 21.  Plaintiff Clark alleges he is a former

15  employee of Wells Fargo Advisors, LLC.  Id. ¶ 6  In their FAC,

16  Plaintiffs allege a single claim for violation of California's

17  Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200.

18  Id. ¶¶ 25-30.  Specifically, Plaintiffs allege that "defendants

19  violated section 450 of the California Labor Code by requiring

20  plaintiffs and other California employees to maintain their

21  securities brokerage accounts with and/or obtain their other

22  investment-related services from defendants."  Id. ¶ 27.  Section

23  450 of the California Labor Code provides in pertinent part: "No

24  employer . . . may compel or coerce any employee . . . to patronize

25  his or her employer, or any other person, in the purchase of any

26  thing of value."  Cal. Lab. Code § 450.

27

28  [1] Plaintiffs filed a Motion for Leave to File a Surreply and
    attached a Surreply to the Motion.  ECF No. 30.  The Court GRANTS
    leave to file the Surreply and has considered the arguments therein
    in reaching its decision.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

## III. **LEGAL STANDARDS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## IV. **DISCUSSION**

Defendants argue that Plaintiffs' claim is preempted by federal law because it conflicts with the securities regulatory framework established by Congress.  Mot. at 17-20.  Specifically, Defendants argue that federal regulators have granted firms like Wells Fargo discretion to restrict the external trading activities of their employees in order to prevent abusive practices such as insider trading.  Id. at 2.  Defendants contend that Plaintiffs' claim is preempted because, if successful, it would eliminate this discretion, thereby impeding the accomplishment of Congressional

United States District Court
For the Northern District of California

1   objectives.  Id. at 20.  Plaintiffs counter by asserting that their

2   claim is not preempted by federal regulations because Wells Fargo

3   could change its policy in a manner that would comply with both

4   federal regulations and California Labor Code Section 450.  Opp'n

5   at 3.  The Court agrees with Defendants.

6       **A.   Federal Preemption of State Law**

7       Federal laws preempt conflicting state laws under the

8   Supremacy Clause, which states: "Laws of the United States . . .

9   shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.

10  "The phrase 'Laws of the United States' encompasses both federal

11  statutes themselves and federal regulations that are properly

12  adopted in accordance with statutory authorization."  City of New

13  York v. FCC, 486 U.S. 57, 63, (1988) (quoting U.S. Const. art. VI,

14  cl. 2.).  As such, "[t]he statutorily authorized regulations of an

15  agency will pre-empt any state or local law that conflicts with

16  such regulations or frustrates the purposes thereof."  Id. at 64.

17  "[T]he purpose of Congress is the ultimate touchstone of pre-

18  emption analysis."  Cipollone v. Liggett Grp., Inc., 505 U.S. 504,

19  516 (1992).

20      Federal law may preempt state law in three ways: (1) express

21  preemption, where Congress explicitly defines the extent to which

22  its enactments preempt state law; (2) field preemption, where state

23  law attempts to regulate conduct in a field that Congress intended

24  federal law exclusively to occupy; or (3) conflict preemption,

25  where it is impossible to comply with both state and federal

26  requirements or where state law "stands as an obstacle to the

27  accomplishment and execution of the full purpose and objectives of

28  Congress."  Indus. Truck Ass'n, Inc. v. Henry, 125 F.3d 1305, 1309

1  (9th Cir. 1997).

2  **B.   Federal Securities Law and Regulatory Scheme**

3      "The Securities Exchange Act of 1934 created a system of

4  supervised self-regulation in the securities industry" by

5  delegating government power to self-regulatory organizations

6  ("SROs"), such as the New York Stock Exchange ("NYSE") and the

7  National Association of Securities Dealers ("NASD").[2] Credit

8  Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1128 (9th

9  Cir. 2005).  Within this framework, SROs are responsible for much

10  of the day-to-day regulation of securities markets, while the

11  Securities and Exchange Commission ("SEC") is charged with ultimate

12  responsibility and control of the national market system for

13  securities.  See Silver v. N.Y. Stock Exch., 373 U.S. 341, 352

14  (1963).  SROs promulgate rules and regulations, subject to approval

15  by the SEC, designed to enforce "compliance by members of the

16  industry with both the legal requirements laid down in the Exchange

17  Act and ethical standards going beyond those requirements."

18  Grunwald, 400 F.3d at 1128 (internal citation omitted).  Within

19  this regulatory scheme, SROs are the primary regulators of

20  securities broker-dealers.  Sparta Surgical Corp. v. NASD, 159 F.3d

21  1209, 1213-14 (9th Cir. 1998).  The Ninth Circuit has made clear

22  that "SRO rules approved by the [SEC] . . . preempt conflicting

23  state law when the two are in conflict, either directly or because

24  ──────────────────────

25  [2] In 2007, the NASD and the NYSE consolidated their member-
regulation operations into one self-regulatory organization known
as the Financial Industry Regulatory Authority ("FINRA").  See

26  Karsner v. Lothian, 532 F.3d 876, 879 n.1 (D.C. Cir. 2008).  NASD
rules and incorporated NYSE rules remain in effect until superseded

27  by new consolidated FINRA rules.  See FINRA Information Notice,
"Continuing Application of NASD Rules and Incorporated NYSE Rules,"

28  December 8, 2008,
http://www.finra.org/Industry/Regulation/Notices/2008/P117507.

1  the state law stands as an obstacle to the accomplishment of the

2  objectives of Congress."  Grunwald, 400 F.3d at 1128.

3       The SEC and SROs require securities firms to monitor their

4  employees' personal securities transactions and maintain procedures

5  that each firm determines to be reasonably designed to prevent

6  potential securities violations by employees.  For example, NYSE

7  Rule 342.21(a) requires member firms to subject trades in listed

8  securities by its employees "to review procedures that the member .

9  . . determines to be reasonably designed to identify trades that

10 may violate" securities laws or NYSE rules against conduct such as

11 insider trading.  NYSE Rule 342.21(a).  It further mandates that

12 member firms conduct prompt internal investigation into any trade

13 that may have violated any securities law or rules.  Id.

14 Similarly, NASD Rule 3010 requires each member to "establish and

15 maintain a system to supervise the activities of each registered

16 representative . . . that is reasonably designed to achieve

17 compliance with applicable securities laws and regulation and all

18 applicable NASD rules."  NASD Rule 3010.  Likewise, FINRA Rule 3130

19 requires each member to designate a principal or principals to

20 establish and maintain supervisory control policies.  See FINRA

21 Rule 3130.

22      The federal securities regulatory framework grants member

23 firms the discretion to determine how to oversee and supervise

24 their employees' trading activities, including the discretion to

25 require employees to maintain their security accounts in house.

26 For example, in 2002, the SEC approved NYSE Rule 407, which

27 expressly provides member firms with discretion to determine if and

28 when an employee may be permitted to open a brokerage account

**United States District Court**
For the Northern District of California

1  outside the firm.  NYSE Rule 407.[3]  Under Rule 407, employees of

2  member firms have a legal obligation either to maintain their

3  accounts with their employer's firm or to obtain consent before

4  opening an account or placing trades outside the firm.  See, e.g.,

5  Defs' RJN Ex. T, <u>James Giannino, Former Non-Registered Employee</u>,

6  NYSE Hearing Panel Dec. 01-7 (NYSE Jan. 17, 2001) (sanctioning

7  former employee of PaineWebber, Inc., and Charles Schwab & Co.,

8  Inc. for maintaining an account at another firm).[4]  Rule 407's

9  requirement of "consent" from the firm, rather than mere "notice"

10 by the employee, shows that the rule grants the firm discretion to

11 determine its own compliance policies and to withhold consent for

12 outside accounts.

13      The legislative history of other rules within the federal

14 securities regulatory scheme leaves no doubt that firms have

15 discretion to require employees to maintain their accounts in-

16 house.  For example, in 1988, Congress amended the Exchange Act

17 through the Insider Trading and Securities Fraud Enforcement Act

18 ("ITSFEA"), which provided that:

19

20 _____

[3] NYSE Rule 407(b) provides: "No member . . . or employee

21 associated with a member organization shall establish or maintain
any securities or commodities account or enter into any securities

22 transaction with respect to which such person has any financial
interest or the power, directly or indirectly, to make investment

23 decisions, at another member or member organization, or a domestic
or foreign non-member broker-dealer, investment advisor, bank,

24 other financial institution, or otherwise without the prior written
consent of another person designated by the member or member

25 organization under Rule 342(b)(1) to sign such consents and review
such accounts."

26

[4] Both parties filed requests for judicial notice asking the Court

27 to take notice of various statutes, regulations, and associated
legislative histories.  ECF Nos. 23 ("Defs.' RJN"), 26 ("Pls.'

28 RJN"), 28 ("Defs.' Supp. RJN").  Because the documents submitted
are publicly available and not subject to reasonable dispute, the
Court GRANTS both RJNs pursuant to Federal Rule of Evidence 201.

**United States District Court**
For the Northern District of California

> Every registered broker or dealer shall establish, maintain, and enforce written policies and procedures reasonably designed, taking into consideration the nature of such broker's or dealer's business, to prevent the misuse in violation of this chapter ... of material, nonpublic information by such broker or dealer or any person associated with such broker or dealer.

15 U.S.C. § 78o(g).  In passing the ITSFEA, Congress expressed its expectation "that a firm's supervisory system would include, at a minimum, employment policies such as those requiring personnel to conduct their securities trading through in-house accounts or requiring that any trading in outside accounts be reported expeditiously to the employing firm."  H.R. Rep. 100-910, at *22 (1988), as reprinted in 1988 U.S.C.C.A.N. 6043, 6058-59 (emphasis added).

Similarly, when approving NASD Rule 3050, which requires employees to provide written notice to the member firm before opening a securities account with another member, the SEC stated:

> [T]he NASD is of the opinion that the amendment would prevent instances in which trades may be made on inside information because the employer member was not aware of the existence of the account with another member.  The NASD acknowledges the fact that there may be circumstances which dictate that an associated person hold an account with someone other than their employer member, and this amendment would not serve to prevent that.

Order Approving Proposed Rule Relating to Written Notification of Employer Members By Associated Person Regarding Relations With Each Member, 56 Fed. Reg. 10,931-932 (Mar. 14, 1991) (emphasis added). The SEC's statement suggests that it expected that members would require employee accounts to be held in house except in limited circumstances.  Indeed, in 1990, the SEC's Division of Market

8

Regulation "undertook a comprehensive review of broker-dealer
policies and procedures."  SEC Div. of Mkt. Regulation, Broker-
Dealer Policies and Procedures Designed to Segment the Flow and
Prevent the Misuse of Material Nonpublic Information 1-2 (1990).
The review found that "almost all firms require[d] employees to
maintain accounts with the firm" and that "[t]his restriction
generally extend[ed] to accounts of family members."  Id. at 8 n.
21.  The SEC did not criticize such policies, instead determining
that "at this time, no aspect of current procedures require
Commission rulemaking."  Id. at 18.

C.  <u>**Plaintiffs' UCL Claim Is Preempted by Federal Law**</u>

Plaintiffs argue that California Labor Code Section 450
requires Wells Fargo to permit its California employees to open and
maintain securities accounts outside the firm, or at least to
refrain from charging employees for in-house services.  Opp'n at 3.
They argue that because no regulation specifically requires Wells
Fargo to impose an in-house account requirement, there is no
conflict between the federal regulatory scheme and Section 450.
Id.  In other words, Plaintiffs argue that conflict preemption does
not bar their claim because it is not impossible for Wells Fargo to
comply with federal securities regulations and Section 450.  Courts
in this circuit have recently rejected this argument in cases
similar to this one.  See Bloemendaal v. Morgan Stanley Smith
Barney LLC, No. 10-1455, 2011 WL 2161325, at *7 (C.D. Cal. May 23,
2011); Heilemann v. Bank of America Corp., No. 10-8623, 2011 U.S.
Dist. LEXIS 68155, *5 (C.D. Cal. June 6, 2011).  For the same
reasons set forth in those decisions, the Court concludes that
Plaintiffs' claim is preempted.

**United States District Court**
For the Northern District of California

1    Conflict preemption applies not only where it is impossible to

2    comply with both state and federal law, but also where state law

3    "stands as an obstacle to the accomplishment and execution of the

4    full purpose and objectives of Congress." Henry, 125 F.3d at 1309.

5    The federal securities regulatory framework unmistakably provides

6    discretion for firms to decide how best to monitor the trading

7    activities of employees.  That discretion is plain from the text of

8    NYSE Rule 407, as well as from the legislative histories of

9    numerous other regulations.[5]  Plaintiffs seek to use Section 450 to

10   eliminate that discretion.  Controlling case law prohibits the use

11   of state law to such end.  See Grunwald, 400 F.3d at 1133-34

12   (finding California Judicial Council's disqualification rules

13   preempted because they would remove discretion given to NASD

14   Director of Arbitration); Chae v. SLM Corp., 593 F.3d 936, 942-43,

15   946 (9th Cir. 2010) (finding UCL claim challenging billing

16   statements used by student loan servicer preempted by federal

17   regulations that provided servicers with flexibility concerning

18   billing statements).

19       Grunwald and Chae both involved situations in which regulatory

20   rules granted discretion to the defendant and the Ninth Circuit

21   held that plaintiffs could not use state law to impinge upon that

22

23   [5] Plaintiffs argue that even if NYSE Rule 407 preempts their claim
     against Wells Fargo Bank, N.A. and Wells Fargo Advisors, LLC, its
24   preemptive effect does not extend to their claim against Wells
     Fargo Investments, LLC, because that entity was not a member of the
25   NYSE during the relevant time period.  Opp'n at 10-11.  This
     argument fails because it is not only NYSE Rule 407 that preempts
26   Plaintiffs' claim.  The preemptive effect of the Exchange Act,
     ITSFEA, and NASD rules also bar Plaintiffs' claim.  See
27   Bloemendaal, 2011 WL 2161352, at *7 ("[p]reventing Defendant from
     creating and enforcing a policy that Congress and the [SEC] have
28   expressly and implicitly approved undoubtedly frustrates the
     Congressional goals behind the Exchange Act and ITSFEA, namely
     preventing insider trading.").

discretion.  The same applies here.  The comprehensive federal regulatory scheme requires securities firms to monitor their employees' trading activities and grants firms discretion in determining effective methods for doing so.  Both Congress and the SEC have recognized that one such method is requiring employees to conduct their securities trading in-house.  Furthermore, nowhere does the regulatory scheme limit firms' discretion to require employees who open in-house accounts to incur the normal charges paid by all customers.  Plaintiffs' attempt to eliminate firms' discretion would pose a formidable "obstacle to the accomplishment and execution of the full purpose and objectives of Congress." Henry, 125 F.3d at 1309.

**V.   CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion to Dismiss filed by Wells Fargo Investments, LLC, Wells Fargo Bank, N.A., and Wells Fargo Advisors, LLC.  The Court DISMISSES Plaintiffs Douglas McDaniel and Bryan Clark's action WITH PREJUDICE.

IT IS SO ORDERED.

Dated: July 22, 2011

UNITED STATES DISTRICT JUDGE